SCHUSTER v. MYERS et al., Appellants.

### Division Two, March 7, 1899.

1. **Conveyances:** DESCRIPTION: UNCERTAINTY. The description in the deed in this case was: "All that portion of land lying between the west twenty feet of lot five and lot four in block three, containing a frontage of three feet more or less." Defendants contend that "where two lots are separated by a line only, a description is absurd and meaningless that undertakes to convey three feet more or less in between such lots," and therefore the deed is not sufficient to pass the title because of uncertainty. An actual survey showed that, measuring from the southeast corner of the block west to and including lot four (giving to it sixty feet, its platted width), and then measuring lot five from the southwest corner east, there is a strip of land two feet and ten inches wide between the two lots, which is conveyed by this deed, and therefore the description was sufficient to carry the title.

2. **Ejectment:** INJUNCTIVE RELIEF: INSOLVENCY NOT PLEADED. The petition stated that defendants were about to erect a building upon a strip of land three feet wide belonging to plaintiff, and to dig up a foundation therefor, and if permitted to do so it would result in irreparable harm and injury to plaintiff, for which he has no adequate remedy at law. But there was no allegation that the defendants were insolvent, nor was it stated or shown how, and in what way, and for what reason the damages would be irreparable. *Held*, that the injunction was improvidently granted, and it was error to make it perpetual. Nor was the plaintiff entitled to injunctive relief at all, since he obtained and was clearly entitled to judgment in ejectment on the first count of his petition.

*Appeal from Sullivan Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED IN PART; REVERSED IN PART.

JOHN M. SWALLOW and A. W. MULLINS for appellants.

(1) The plaintiff, to be entitled to recover in this case, had to show legal title in himself to the strip of ground

sued for.   Kingman & Co. v. Sievers, 143 Mo. 525; Clay
v. Mayr, 144 Mo. 380; Cox v. Arnold, 129 Mo. 337; Ford
v. French, 72 Mo. 250; West v. Bretelle, 115 Mo. 661;
Howard v. Tracy, 118 Mo. 639; R. S. 1889, sec. 4626. The
quitclaim deed from the Pfeiffer heirs to the plaintiff con-
veyed nothing.   Where two lots or parcels of ground are
separated by a line only, as in this case, a description is ab-
surd and meaningless that undertakes to convey "three feet
more or less," in "between" such lots.   (2)   The defend-
ants' objections to this deed should have been sustained
for the reasons stated: (a) That those heirs owned nothing
there to convey; (b) and that there was no ground for the
deed to apply to.   In brief, the deed described and included
no land whatever.   (3)   The temporary injunction was
improvidently granted by the judge of the probate court, and
the circuit court erred in sustaining it and making the in-
junction perpetual.   McKinzie v. Matthews, 59 Mo. 102;
Christian v. St. Louis, 127 Mo. 109; Bailey v. Wade, 24
Mo. App. 186; Burgess v. Kattleman, 41 Mo. 480.

CALFEE, SWANGER & CALFEE for respondent.

(1)   The call for quantity in the deeds may be re-
sorted to to make that certain which would otherwise be un-
certain.   Davis v. Hess, 103 Mo. 31.   (2)   If there is a
strip between lots 5 and 4, the deed from Henry Pfeiffer's
heirs conveyed it to plaintiff; if there is no space between
said lots, then the strip in question undoubtedly belongs to
lot four and plaintiff acquired title to it by his deed from
Henry Pfeiffer of December 6, 1890.   In no event could
defendants be injured by the admission in evidence of the
deed of March 6, 1896.   (3)   Ejectment was the appropri-
ate action in this case and under proper averments in the
petition, supported by the requisite proof, an injunction
pendente lite might be granted as auxiliary to the action at
law.   Smith v. Jameson, 91 Mo. 13.   (4)   On the face of

his petition plaintiff was entitled to the relief demanded and the temporary injunction was granted by the probate court as a matter of course. R. S. Mo. sec. 5491. (5) The finding of the court being for the plaintiff on the first count of his petition, he was therefore clearly entitled to the equitable relief prayed for and the circuit court committed no error in making the injunction perpetual. Chancery will interfere by injunction where the acts done or threatened are ruinous to the property trespassed upon, "or are of a character to permanently impair its just enjoyment in the future." Echelkamp v. Schrader, 45 Mo. 505. (6) No allegation of insolvency was necessary as the facts stated show that the injury threatened would have been irreparable within the legal definition of that term. McPike v. West, 71 Mo. 199; Bank v. Kercheval, 65 Mo. 682; R. S. Mo., sec. 5510.

BURGESS, J.—The petition in this case is in two counts, the first in ejectment for the possession of a strip of land fronting south on the public square in the town of Green City, Sullivan county, three feet in width and one hundred and thirty feet in length, lying and being immediately adjoining lot five on the west, and off of the east side of lot four in block three in said town. The second count is for injunctive relief, alleging as ground therefor that defendants were then excavating for the purpose of erecting a brick store house partly upon the land in question of which plaintiff is the owner, and if permitted to do so his injury would be irreparable.

A temporary injunction was granted upon the second count.

Both parties claim title under Henry Pfeiffer, as the common source.

The answer, after denying all the allegations in the petition, alleges that defendants are the owners of the land by inheritance from their father, Henry Myers, to whom they allege Henry Pfeiffer conveyed it by deed on the thirty-first

day of December, 1881, and that they and their father have been in actual adverse possession of it ever since.

In 1880 Henry Pfeiffer, being the owner of the forty acre tract of land upon which the town of Green City is located, laid out and platted said town into lots, blocks, streets, alleys, and a public square. The south side of block three in said town fronts south on the north side of the public square, and was supposed and intended at the time it was surveyed as aforesaid, to be one hundred and eighty feet wide from east to west and was divided into three lots with a supposed and intended frontage of sixty feet each, fronting south and extending north one hundred and thirty feet, to an alley. These lots, commencing on the west, were numbered four, five and six. Lots five and six, being the center and east lots, were sub-divided into three lots each with a frontage of twenty feet. Henry Pfeiffer, in disposing of these sub-divided lots, began on the east and sold off business lots twenty feet wide and so described them in the deeds. He continued to sell off these sub-divided lots until about 1882, when he sold the west twenty feet of lot five to Henry Myers, the father of the defendants in this case and from whom they derive title.

Henry Myers, immediately after his purchase of said lot, erected a business building thereon covering the entire width of the lot, twenty feet. In 1890 Henry Pfeiffer sold lot four, the west lot of said block three, to Henry W. Schuster, the plaintiff in this case, who at once erected a business house on what he supposed to be the west forty-four feet thereof. About or near the time that Henry Pfeiffer sold to plaintiff as aforesaid, the defendants with the permission of Henry Pfeiffer, constructed a stairway on the west side of their building.

About 1892 the plaintiff, Schuster, built an addition sixteen feet wide on the east side of his first building, thus making his building sixty feet wide. It was then discovered

that there was a vacant, wedge-shaped strip about three feet wide at the front or south end and running to à point about one hundred feet north, lying between plaintiff's and defendants' buildings, that is, the north end of plaintiff's building immediately adjoined defendants' building, but at the south end there was nearly three feet vacant space between them.

In January, 1896, defendants' building was destroyed by fire and they began making preparations to rebuild. But instead of preparing to build on their old foundation, they commenced to excavate and arranged to place their west wall along and immediately adjoining plaintiff's east wall, thus seeking to make their new building about twenty-three feet at the front or south end instead of twenty feet, the width of their lot and old building. Then plaintiff obtained a quitclaim deed from the heirs of Henry Pfeiffer, the deceased, and at once began this action of ejectment to recover possession of said strip, with a count for injunctive relief.

On the trial plaintiff read in evidence a warranty deed, dated December 6, 1890, from Henry Pfeiffer to himself, conveying to him lot four in block three in the village of Green City.

He next offered in evidence a quitclaim deed, dated March 6, 1896, from the heirs at law of Henry Pfeiffer, deceased to Henry W. Schuster, the plaintiff, conveying all that portion of land lying between the west twenty feet of lot five, and lot four in block three, containing a frontage of three feet more or less in said village. Defendants objected to the reading of this deed in evidence upon the ground that the grantors therein named were not owners of said property, and had no right to make the conveyance, and because there is no ground for the deed to apply to. The objections were overruled, and the deed read in evidence and defendants saved their exceptions.

Plaintiff next introduced in evidence a plat of the village of Green City and records of the recorder's office of said

county of the various deeds of Henry Pfeiffer and wife conveying to different persons all of lots five and six as subdivided.

E. L. Fish and Henry Pfeiffer, Jr., witnesses for plaintiff and who were chain-carriers when block three was subdivided into lots, stated in substance that they began at the southeast corner of the block and measured sixty feet west for lot six, then sixty feet further in the same direction for lot five, and then sixty feet still further west for lot four. That lots five and six were then subdivided into twenty-foot lots. Of these twenty foot lots Henry Myers, father of defendants, purchased the west half of lot five upon which he builded a business house. According to the evidence the west wall or foundation of this building was just one hundred and twenty feet from the southeast corner of the block. Charles Reeves, county surveyor for said county, also a witness for plaintiff, testified that he made a survey of lots six, five and four in block three in Green City, and that he began at the southeast corner of the block in so doing; that he measured off sixty feet and then measured off five twenty-foot lots, which brought him to the east line of Myers' lot. Later on he stated that it is just twenty-two feet and ten inches from there to the southeast corner of plaintiff's building.

It also appears from the evidence that shortly after plaintiff purchased lot four from Pfeiffer he erected a building forty-four feet wide upon it; that when about to begin the construction of the building in order to know where to locate it, instead of measuring from the southwest corner of defendants' building, he measured from the west side of the street lying west of him, and, that he thought he was putting the southwest corner of his building just sixty feet from defendants' building. Afterwards, however, when he built a sixteen foot addition on the east side of his building, it left the strip in question.

Plaintiff here rested.

Defendants then asked an instruction in the nature of a demurrer to the evidence which was refused, to which ruling defendants excepted at the time, and saved their exceptions.

Judgment was then rendered for plaintiff for possession of the land, one cent damages, and perpetuating the injunction.

After unsuccessful motion for new trial, and in arrest, defendants appeal.

Defendants claim that plaintiff showed no title to the land in question, hence their demurrer interposed to the evidence should have been sustained, but we are unable to concur in this view. While it is alleged in the second count in the petition "that by mistake of the person who surveyed and platted said town, said lots four, five and six, in said block three were shown to have a frontage of 180 feet on said public square when in truth and in fact the frontage of said block was 183 feet," there does not appear to have been any mistake in the measurement of lots five and six, as the evidence all shows they have, according to measurement, a frontage of exactly one hundred and twenty feet, but it was shown that from the southwest corner of plaintiff's lot four to the southwest corner of defendants' lot, it is sixty-two feet and ten inches, which would leave a strip between plaintiff's lot, it being sixty feet in width, and defendants' lot on the east of it, two feet and ten inches in width. It thus seems clear that at the time plaintiff, and the defendants' father, under whom they claim title to their lot, purchased their respective lots from Henry Pfeiffer, that Pfeiffer still owned the strip in question which lies between those two lots. The question then arises as to whether or not the deed from the heirs of Henry Pfeiffer to plaintiff for the land in question is sufficient to pass the title thereto to plaintiff? Defendants contend that it is not. The argument is, that "where two lots or parcels of ground are separated by a line only, a description is absurd and meaningless that undertakes to convey three feet

more or less in between such lots." But the argument does not meet this case. The description in the deed in question is, "All that portion of land lying between the west twenty feet of lot five and lot four in block three, containing a frontage of three feet more or less," while the evidence shows, that measuring from the southeast corner of the block west to and including defendants' lot, then measuring plaintiff's lot from the southwest corner east, there is a strip of land between the two lots which does not belong to either, which is conveyed by this deed, and the description is not void for uncertainty. But if upon the other hand the measurement of all the lots and their subdivisions should be measured from the southeast corner of the block west, then the title to the strip in question passed to plaintiff by his deed from Pfeiffer of December 6, 1890. So that in any event plaintiff is entitled to the possession of the land.

It is also insisted that the injunction was improvidently granted and that the court committed reversible error in making it perpetual. It is not every threatened injury to land that will entitle the owner thereof to an injunction restraining such injury, but in order to entitle him to such relief it must be made to appear that the threatened injury if not prevented will "amount to irreparable damage, incapable of being fully compensated by an action at law; a substantial, not an unimportant or trivial injury, not disproportionate to the relief sought. [Bailey v. Culver, 84 Mo. 531.] And there is no allegation in the petition which brings the case within the rule thus announced. It is true it is alleged that defendants are about to erect a building upon the land and to dig a foundation therefor and if permitted to so do, it will result in irreparable harm and injury of plaintiff, for which he has no adequate remedy at law, but there is no allegation that defendants are insolvent, nor sufficient allegation of irreparable damages.

It is said: "The former is not always necessary, but in regard to the latter, a general averment that damages threat-

ened are irreparable is insufficient. It must be shown how, and in what way, and for what reason, the threatened damages are irreparable. What damages are irreparable, is a question to be decided by the court from the facts stated." [McKinzie v. Mathews, 59 Mo. 99.] We are left to infer as to how or in what way plaintiff could be damaged irreparably by the erection of a brick store house partly upon the strip of ground in question, and we confess our inability to do so. Moreover, plaintiff had an adequate remedy at law as shown by the result of this cause upon the first count in the petition, and in such circumstances injunction will not lie.

We therefore affirm the judgment as to the first count in the petition, and reverse the judgment as to the second count, and remand the cause with directions to the court below to order the costs to be taxed against defendants on the first count, and against the plaintiff on the second, as near as it may be done.

GANTT, P. J., and SHERWOOD, J., concur.