HORTON E. DOTY *v.* VILLAGE OF JOHNSON.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ

Opinion filed October 11, 1910.

*Waters and Watercourses—Dams—Right to Maintain—Eminent Domain—Flowage of Land, Remedies of Owner—Injunction —Taking Property for Public Use—Compensation—Doctrine of Comparative Equities—Application—Costs in Equity— Persons Entitled—Disposition on Appeal.*

A person who has the right, as against a riparian owner, to maintain a dam at its normal height cannot maintain it at a greater height, and the riparian owner has the correlative right to insist that the stream flow in its natural channel and at its usual height.

If the flowage of another's land by a village, in raising its dam used in operating its electric light plant, is a taking of land for a public use it is within Ch. 1, Art. 2, of the Constitution, prohibiting the taking of property for a public use without compensation.

In a suit in equity to restrain the maintenance of a dam, what damages are irreparable is a question to be decided by the court on the facts found.

In view of the constitutional provision prohibiting the taking of private property for a public use without compensation, the right of a riparian

owner to enjoin a village from maintaining a dam at an increased height is not affected by the fact that little damage will result to him by such maintenance compared with the village's damage in being compelled to lower the dam to its normal height.

No. 271, Acts 1906, § § 1, 5, authorizing the village of Johnson to hold water rights to operate an electric light plant, expressly contemplates that acquisition of flowage rights shall be by purchase or condemnation.

The State cannot authorize the taking of private property for private use against the will of the owner.

Judicial notice is taken that in this State high water and ordinary freshets are likely to occur in streams at different seasons of the year, sometimes carrying down floodwood and large quantities of ice.

Where some injury to lands on account of flowage in freshets and high water caused by raising a dam is shown, probable continuance is presumed, and if the injury seems likely to continue, equity will not refuse to interfere because the damage is slight.

The compensation for the right of flowage is to be determined, not for any one year, nor on the conditions shown during a particular year, but for all time on evidence legitimate for that purpose.

Flowage of lands by wrongfully raising a dam is an invasion of the landowner's rights, continuous in nature, and which continued a sufficient length of time under a claim of right may ripen into an easement, and entitles him to at least nominal damages; but his only adequate remedy is a suit in equity, where in compensation for past injury an injunction against the continuance of the wrongful act can be had.

Where a village acted in good faith in wrongfully raising a dam used in connection with its electric light plant, and to lower it would entail comparatively large expense, injunction against flowage of lands caused by the increased height will be suspended for a reasonable time to permit the village either to purchase or condemn the right of flowage.

Past as well as probable future damages to land flowed should be assessed on eminent domain proceedings to condemn the right of flowage.

The prevailing party in a suit in equity is entitled to costs unless the case discloses some reason to the contrary; and the court is called upon to exercise its discretion in that regard only when the case shows some reason why such costs should not be awarded.

On reversal of a case in equity, where no reason appears why the prevailing party should not be awarded costs below, the Supreme Court will make that award.

APPEAL IN CHANCERY. Heard on the pleadings and finding of facts made by the Chancellor, at the December Term, 1909, Lamoille County, *Hall,* Chancellor. Decree dissolving the temporary injunction and dismissing the bill. The orator appealed. The opinion states the case.

*F. G. Bicknell, T. C. Cheney* and *M. P. Maurice* for the orator.

As a result of the decree below, the rights of the orator are invaded and he is deprived of his property without due process of law. 2 Farnham on Waters, 1765; *Wilhelm* v. *Burleyson,* 106 N. C. 381, 11 S. E. 590; 2 Farnham on Waters, 1767-8; *Snow* v. *Cowles,* 22 N. H. 302; *Rhodes* v. *Whitehead,* 27 Tex. 304; *Beech* v. *Kudere,* 15 Pa. super. Ct. 89, 84 Am. Dec. 631.

Whether the orator has suffered irreparable damage is a question of law on the facts found, and not one of fact as treated below. *Harman* v. *Caretta Ry. Co.,* 61 W. Va. 356, 123 Am. St. Rep. 985; 22 Cyc. 836; *Sullivan* v. *Steel Co.,* 208 Pa. St. 540, 66 L. R. A. 712; *Walters* v. *McElroy,* 151 Pa. St. 549, 25 Atl. 125.

Where acts of trespass are continuous or constantly recurring whereby, if permitted to continue, irreparable injury may result, as where the continuous wrongful invasion of plaintiff's right might ripen into a prescriptive right, an injunction will lie to restrain such trespass, both on the ground that the remedy at law by suits for damage is inadequate and to prevent a repetition or a multiplicity of suits. 4 Pom. Eq. Jur., 3rd Ed., 1357; High on Injunctions, § § 697-700; *Cloyes et al.* v. *Middlebury Elec. Co.,* 80 Vt. 109; *Lyon* v. *McLaughlin,* 32 Vt. 423; *Canfield* v. *Andrews,* 54 Vt. 1; *Waterman* v. *Buck,* 58 Vt. 519; *Ames* v. *Dorset Marble Co.,* 64 Vt. 10; *Kellogg* v. *King,* 114 Cal. 378, 55 Am. St. Rep. 74; *Blodel* v. *Consolidated Gas Co.,* 89 Md. 732, 43 Atl. 817, 46 L. R. A. 187; *Dudley* v. *Hurst,* 1 Am. St. Rep. 375; *Lembeck* v. *Nye,* 47 Ohio St. 336, 21 Am. St. Rep. 828; *Mills* v. *New Orleans etc. Co.,* 65 Miss. 391, 7 Am. St. Rep. 671; *Carney* v. *Hadley,* 37 Am. St. Rep. 108; *Troe* v. *Larson,* 84 Iowa 649, 35 Am. St. Rep. 336; *Cragg* v. *Lovinson,* 21 L. R. A. (N. S.) 417; *Mendelsohn* v. *McCabe,* 144 Cal. 230, 103 Am. St. Rep. 78.

The upper riparian owner has the right to have the water leave his property at its natural level, and an invasion of that right is an injury to him which gives him a right of action. 2 Farnham on Waters, 1771-1773; *Woodman* v. *Tufts,* 2 N. H. 88; *Amoskeag Mfg. Co.* v. *Goodale,* 46 N. H. 53; *Wright* v. *Moore,* 38 Ala. 593, 82 Am. Dec. 214; *Ripka* v. *Sargent,* 7 Watts & S.

9, 42 Am. Dec. 214; *Laewrie et als.* v. *Silsby et als.* 82 Vt. 512; *Wheatley* v. *Chrisman*, 24 Pa. 298; *Heath* v. *Bank et al.*, 79 Vt. 305; *Boyce* v. *Grundy*, 3 Vt. 210. And the doctrine of "comparative equities" has no application to this case. Groff's Appeal, 28 Pa. St. 621; *Northern Pac. Ry. Co.* v. *Cunningham*, 103 Fed. 708; *Note to Moore* v. *Haliday*, 103 Fed. 740; 2 Wood on Nuisances, 1151; 22 Cyc. 782; *Sullivan* v. *Jones etc. Co.*, 208 Pa. 540; *Proesky* v. *Cumberland Realty Co.*, 35 Misc. (N. Y.) 50; *Cilly* v. *Cincinnati*, 7 Ohio Dec. 344; *Lynch* v. *Union Sav. Inst.* 159 Mass. 306; *Tucker* v. *Howard*, 128 Mass. 361; *Walters* v. *McElroy*, 151 Pa. 549.

*J. W. Redmond* and *W. E. Tracy* for the defendant.

On the facts found the bill was properly dismissed. It is affirmatively found that there is no irreparable injury; and it is also found that the damage to orator is slight, if any, in comparison with the damage resulting to defendant, if it is required to lower its dam. *Ottaquechee Woolen Co.* v. *Newton*, 57 Vt. 468; 1 High on Injunctions, 4th Ed., §21; *Quackenbush* v. *Van Riper*, 3 N. J. Eq. 350, 29 Am. Dec. 716; *Bassett* v. *Salsbury, etc. Co.*, 47 N. H. 426.

Besides the doctrine of "comparative equities", here is involved the doctrine that courts hesitate to enjoin an undertaking had by a municipality under authority of law for a public use. 22 Cyc. 784; 2 High on Injunctions §1185.

WATSON, J. By No. 271 of the Laws of 1906, the defendant village was empowered to construct and maintain a new electric light plant for the purpose of lighting the streets, walks, and public grounds of the village, and any buildings therein. For this purpose the village was given the right to take or purchase, acquire and hold, any water power, land, rights of flowage, and rights of way in the town of Johnson needed for the construction, maintenance and operation of such plant, on payment of suitable damages or compensation as therein provided. Sec. 1.

On a vote being duly taken for that purpose, it was made the duty of the trustees of the village to construct and maintain such plant (Sec. 2, 4.), and in so doing they were given the power

to take any water power, land, rights of flowage, and rights of way of any person or corporation which might be necessary, and if the price thereof or the damage occasioned could not be agreed upon, or if the owner or owners should dispute the necessity for the taking, the trustees were authorized to exercise the power of eminent domain. Sec. 5. By No. 273, Laws of 1908, the defendant was authorized to extend its electric lines beyond its territorial limits for a distance not exceeding two miles in any direction, and to supply persons in the village and also within such two miles' limit with electric power and lights.

After the act of 1906 became effective, and on the 30th day of September, 1907, the village, through its trustees, entered into a contract with Parker & Stearns whereby the latter leased to the village for the term of ninety-nine years the first right to take water from the water privilege owned by the lessors and known as the Leland Starch Factory water power, the village "to use said water power for municipal lighting purposes and said village is to have the further right to use for commercial purposes one hundred fifty horse power." It was conceded that under this contract the village owns the right formerly owned by Parker & Stearns.

The defendant and its predecessors have owned and occupied this water privilege and have there maintained a dam across the Gihon river for more than forty years. No question is made but that the defendant has the right to erect and maintain a dam, where the one in question is, to the height of "two feet and eight inches above the highest point of a ledge upon which the dam now" (September 11, 1883) "stands, which point is about twenty feet from the southeasterly bank of said Gihon river." This point is marked by a pin, called in this case a "bench mark". The dam has been maintained at varying heights, but never more than two feet and eight inches above the "bench mark", until Parker & Stearns purchased it in 1900, when they made it three or four inches higher. Subsequently they put on flash boards, raising it from twelve to sixteen inches more. When the temporary injunction, issued September 28, 1909, was served the defendant was at work upon the wing, with the purpose of making it a part of, and as high as, the dam, which has been done; and the dam including the wing is from

sixteen to twenty-two inches higher than two feet and eight inches above the "bench mark", it being higher at the southerly end than at the northerly.

The orator owns the land described in the bill, lying northerly and easterly of the dam, a part of which is pasture and the rest meadow. As against the orator, the defendant has a right to maintain the dam at what may be termed its normal height of two feet and eight inches above the "bench mark", but not higher; and the orator has the correlative right to insist that the stream shall flow in its natural channel and at its usual height or level, without obstruction or diversion other than as affected by the dam in question so maintained.

No easement by way of right of flowage is claimed by the defendant in the orator's land. Yet it fairly appears that raising the dam to its present height raises the level of the water in the stream and on the bank or shore of his land, and in times of high water causes it to set back upon or to flow a portion of the pasture and of the meadow. It follows that if the purpose of the taking, as shown by the legislative enactments under which the defendant installed and is operating such new plant, constitutes a public use, within the meaning of Art. 2, Chap. 1, of the State Constitution (a question not here decided), then the facts found show a taking of the orator's property for the use of the public without compensation and in violation of his constitutional rights. *Winn* v. *Rutland*, 52 Vt. 481; *Foster* v. *Stafford National Bank*, 57 Vt. 128. The Supreme Court of the United States has said that "where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle." *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, 20 L. Ed. 557; *United States* v. *Lynch*, 188 U. S. 445, 47 L. Ed. 539; 1 Lewis Em. Dom. 3rd Ed. Sec. 280.

It is urged that the chancellor has found that while there may be some slight damage to the orator in high water by reason of raising the dam, it is not irreparable, and is very slight as

compared with the damage to the defendant if it is required to lower its dam to a point two feet and eight inches above the "bench mark". The force of this finding is materially lessened, however, when we consider that what damages are irreparable is a question to be decided, not as a fact, but by the court from the facts presented. *McKenzie* v. *Mathews,* 59 Mo. 99; *Schuster* v. *Myers,* 148 Mo. 422, 50 S. W. 103. And the finding that the damages to the orator, consequent on the dam remaining at its increased height, are comparatively slight, measured by those to the defendant if required to lower it to normality, although a cogent fact for consideration in shaping the mandate to be sent down, has but little if any force upon the substantive equities inolved, and none as against constitutional guaranties. The authority given to the village (Sect. 1) to "take or purchase, acquire and hold" property necessary for the purpose named, "on payment of suitable damages or compensation," and (Sect. 5.) to exercise the power of eminent domain "if the price" thereof "or the damage occasioned cannot be agreed upon, or if the owner or owners dispute the necessity for the taking," clearly show the contemplation of the act to be that the acquisition, if it involves an effort on the part of the village, shall be by purchase, or by condemnation. These provisions, wholesome in nature, protect the owner as well as the village. Whether to construct and maintain such new plant was optional with the latter; but having elected to do so it must bear the burdens inseparably connected with the privilege granted. It is said in *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439: "The right of eminent domain is an attribute of sovereignty which the state may grant or withhold at its will. When it delegates that right, it may impose upon the donee any condition that does not encroach upon or abridge any of the constitutional rights of those whose property is to be taken. It may require the donee of the right to do more than is demanded by the Constitution, but it may not permit less to be done. If the donee accepts the right and exercises it, the conditions subject to which it is granted cannot be evaded or ignored. They are part and parcel of the grant."

If the right to flow land of the orator is necessary to the efficient operation of the plant authorized, the conditions of

the act under which the defendant takes its power, as well as fair dealing, require that compensation be made therefor. And if the authorized purposes of the plant are so far commercial as to make the taking of property not within the legitimate exercise of the power of eminent domain, the defendant can acquire such right of flowage by purchase only; for the State cannot authorize the taking of private property for private use against the will of the owner. *In re Barre Water Co.*, 62 Vt. 27; *Snow* v. *Sandgate*, 66 Vt. 451.

Regarding the doctrine of comparative equities, invoked by the defendant, it is enough to say that in the circumstances of this case it has no application.

As seen the present height of the dam, considered with refreence to the rights of the orator, is found to be from sixteen to twenty-two inches higher than it should be. A similar finding has been held by the Court of Appeals of New York to be equivalent to a finding that the dam raises the water the same number of inches on the orator's premises. *Rothery* v. *New York Rubber Co.*, 90 N. Y. 30. The findings before us, however, go to the extent of showing that by the unauthorized raise of the dam the water when high is caused to set back upon and cover a portion of the orator's land, and in the spring of 1909 (the only spring since the raising of the dam) drift wood was left thereon, also ice. It is a matter of common knowledge, whereof notice will be taken, that in this mountainous State high water and ordinary freshets are likely to occur in such streams at different seasons of the year, sometimes carrying down floodwood and large quantities of ice. In cases of this character, where some degree of injury is shown, the Court will consider its probable continuance. If the injury seems likely to continue, equity will not refuse to interfere because the damage is slight. In *Attorney-General* v. *Sheffield Gas Consumers Co.*, 3 De Gex., M. & G. 304, 52 Eng. Ch. 304, Lord Justice Knight Bruce said: "It has been argued that the annoyance (if any) felt, and possible to be feared, must be small, slight, and unfit for this court's interference. But the frequent recurrence forever, or during a period probably long and unascertainable, of an annoyance, slight in itself (slight I mean if occurring but upon a single occasion, or recurring only at very

rare intervals) may much interfere with the reasonable convenience and comfort of life." The fact that the record contains no finding of damage to the orator in the spring of 1909 by reason of any raise of the dam above its normal height, which was not compensated for by the overflow, is not very material, as in any event the final decree must be in favor of the orator. The compensation for the right of flowage is to be determined, not for any one year nor on the conditions shown during any one year, but for all time on evidence legitimate for that purpose.

There can be no doubt that the record shows an invasion of the orator's rights, continuous in nature, which, continued a sufficient length of time under a claim of right, may ripen into an easement, and entitles him to recover at least nominal damages. *Willey* v. *Hunter*, 57 Vt. 479. This presents a situation for which an adequate remedy can be had only in a court of equity where compensation may be awarded and also an injunction against the further continuance of the wrongful acts. *Murphy* v. *Lincoln*, 63 Vt. 278; *Canfield* v. *Andrew*, 54 Vt. 1; *Royce* v. *Carpenter*, 80 Vt. 37, 66 Atl. 888; *Cloyes* v. *Middlebury Electric Co.*, 80 Vt. 109, 66 Atl. 1039.

However, it appearing that in raising the dam the defendant acted in good faith, that it was raised in the efficient installation of a plant authorized by law, and that to lower it to its normal height would damnify the defendant to the amount of several thousand dollars, we are of the opinion that the injunction should be suspended for a reasonable time to allow the defendant to acquire the right of flowage in question by purchase, or by condemnation if the taking be within its power of appropriation. Should resort be had to the latter method, the entire damages, with reference to past as well as probable future injuries, should be assessed. *Child* v. *Village of Newport*, 70 Vt. 62; *Pinney* v. *Town of Winchester*, 83 Conn. 76 Atl. 994.

It has sometimes been said that costs in chancery are largely in the discretion of that court, dependent upon the circumstances of the particular case. Yet the general rule, in the nature of a principle, is, that the prevailing party in a suit in equity shall prevail as to costs as well as to the subject matter of the suit, and it is the duty of the court to enforce this rule, unless the case discloses a reason why it should not be done. The dis-

cretion of the court is called into exercise only when the case discloses a 'show of reason, more or less strong, why costs should not be so given. *Thrall* v. *Chittenden*, 31 Vt. 183; *Stearns* v. *Wrisley*, 30 Vt. 661. In recent years it has been the general practice of this Court to leave the costs below to be determined there on remand of the case, as that court is in better position, in the exercise of discretion, to do justice between the parties. Yet where the case is one that does not, by the rule above stated, call for the exercise of discretion, the costs may as well be awarded by this Court. And in the case at bar, since no show of reason is disclosed why costs should not follow the final decree, the mandate will direct that the orator recover his costs.

*Decree reversed and cause remanded with mandate.*