WESTERN TELEGRAPH & TELEPHONE COMPANY *v.* JOHN LAVELLE.

February Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and FISH, Supr. J.

Opinion filed May 3, 1921.

*Use of Land Under License from Owner's Tenant Wrongful— Interference With Property Devoted to Public Use Enjoined Pending Condemnation Proceedings—Past and Future Damages Assessed on Condemnation Proceedings.*

1. Where defendant's tenant, without his knowledge or consent, gave plaintiff telephone company permission to construct and maintain a telephone line over a portion of defendant's land, the construction and maintenance of such line under such permission is without right, and plaintiff is not entitled to an injunction permanently restraining the defendant from interfering with it.

2. In such case, the property being devoted to a public use, and the plaintiff having acted in good faith under mistake as to the true owner of the land and as to the validity of the authority given it to so occupy it, the defendant will be enjoined from interfering with the line during the time necessary to enable the plaintiff to condemn the right of way.

3. In such condemnation proceedings the defendant's entire damage, past as well as future, should be assessed.

APPEAL IN CHANCERY. Bill for an injunction. Heard on a special master's report at the March Term, 1919, Chittenden County, *Waterman,* Chancellor. Decree for the plaintiff. The defendant appealed. The opinion states the case.

*Clarence P. Cowles* and *V. A. Bullard* for the plaintiff.

*H. S. Peck* for the defendant.

WATSON, C. J. The plaintiff, a corporation organized under the laws of this State, and having its principal office in Jones-

ville in the town of Richmond, is engaged in conducting and carrying on a public telephone business, and was so engaged for about ten years prior to the bringing of this suit. The company has telephone lines in many towns in the western part of the State, principally in the Counties of Addison and Chittenden, and accommodates about four hundred and fifty subscribers. During recent years the company has been to considerable expense establishing and maintaining permanent lines by setting larger poles, straightening its lines, and stringing additional wires to secure better service for its customers.

Prior to the fall of 1906 the telephone line of the company, leading from its main office in Jonesville to Hinesburg and Charlotte, was generally along the line and within the limits of the highway, and traversed the highway through the Lavelle farm owned by the defendant, and in that part of the highway that Peter Lavelle had improved and graded and was cultivating. In the fall of 1906 the plaintiff, for the purpose of improving its telephone line and to secure better service for its subscribers, decided to erect a new line of poles and wires from its main office, through Richmond to Hinesburg, Charlotte, Middlebury, and Vergennes, where it connected with the line of the New England Telephone Company. This was to be built with substantial poles carrying about nine cross-arms to which were to be attached about thirty wires, and would support additional wires if the future business of the company required it.

In building this new line, and to straighten its line and shorten the distance as much as possible in the interest of economy and better service, it was necessary for the company to cross private property from one point in the highway to another.

Before constructing the new line the plaintiff, by its manager, F. B. Gillett, who had full power to act in the premises, obtained permission to cross lands owned by different persons severally, and also obtained permission from Peter Lavelle who was then occupying defendant's farm as the latter's tenant, to set the plaintiff's telephone poles, in constructing the new line, upon land owned by the defendant, and attach its telephone wires thereto, and maintain its telephone lines across that part of defendant's farm mentioned in plaintiff's bill of complaint and described in the findings of the master.

Peter Lavelle went into possession of this farm in 1896, continuing to occupy it thereafter until his death in August, 1909; and the findings show that he made improvements on it, claimed to own it or to have some right or interest in it, and in various ways so occupied and managed it as to lead people in the vicinity, including the plaintiff and its manager, to believe that Peter owned it; but, on the facts found by the master, no claim is made that he occupied the farm, or had any rights or interest in it, other than as defendant's tenant, nor that he had any right in law to grant the aforementioned permission to the plaintiff. The position of the latter is, that because of its belief as to Peter's ownership of, or right or interest in, the farm —which is shown to have been apparently well founded—the plaintiff made an agreement and arrangements with Peter for the setting of its poles and the stringing of its wires upon that farm; and that, relying upon the agreement and arrangements so made in good faith, the plaintiff constructed its new line from Jonesville southerly in nearly a straight course across the lands of the different owners by whom, severally, permission had been granted so to do, and the Lavelle farm, removing the old line from the cultivated land along the highway through this farm, to the location of the new line back on the pasture hill, across a place that is rough and ledgy, and of no particular value for grazing or any other purpose in connection with the farm. Under the agreement made by the company with Peter for such removal, the former was given permission to go upon the Lavelle farm to construct and maintain its new line; and was to pay for all damage caused by repairing such line in the future. This agreement was verbal only.

It is found that the new line is built of large poles and crossarms, carrying twenty to thirty wires, and was constructed at a cost of about five hundred and fifty-six dollars a mile; that there are thirteen poles set upon the land of the defendant; that it would cost the plaintiff from four hundred to five hundred dollare to change the line from where it is now established on the Lavelle farm, back to its former location along the highway, and necessitate the building of a crooked line for some distance, which would increase the cost of its maintenance; that the damage to the land in question by reason of the thirteen poles being set as described above does not exceed five dollars, while the benefit to the farm by way of improvement resulting from re-

moving the poles from the cultivated land along the highway to the place of the new line, exceeds that sum.

[1-3]    The plaintiff never obtained permission from the defendant to make the change in the location of its telephone line.    Nor do the facts show that the latter had any knowledge or information that such permission was being or had been granted by his tenant, nor that the telephone line was being or had been so moved until sometime after—it does not appear how long—the removal was complete and the new line in operation. He now seeks to revoke the license granted by the tenant, if it amounted to a license, and compel the plaintiff to remove its poles and wires from the Lavelle farm.    By the decree below he was permanently enjoined from in any way interfering or meddling with the plaintiff's telephone line, or any of the poles, wires, or other attachments comprising the line as the same is now constructed and exists upon that farm.    But such a decree is not justified by the facts of record.    The plaintiff's line is constructed and being maintained upon the defendant's land without right, and without making compensation to him therefor, which is inequitable.    But such occupancy of defendant's land is for a public work, and the work was constructed upon it, the plaintiff acting in good faith under mistake as to the true owner of the property, and as to the validity of the authority given it so to occupy.    No compensation has been made for such occupancy; and the property is in public use.    In these circumstances equity will not permit the plaintiff to be disturbed in its occupancy, provided it makes such compensation as equity shall require.    The plaintiff has the power to take such right of occupancy by condemnation proceedings, and equity will protect it by enjoining the defendant from interfering or meddling with the telephone line in question, and its operation, for such length of time as shall give the plaintiff a reasonable opportunity to avail itself of such proceedings.    Should resort be had to this method, the entire damages, past as well as probable future injuries, should be assessed.    The case of *Doty* v. *Village of Johnson*, 84 Vt. 15, 77 Atl. 866, is full authority for our disposition of the instant case.

*Decree reversed and cause remanded with instructions that the bill be dismissed, unless the plaintiff shall immediately institute condemnation proceedings according to law, for the acquire-*

*ment of the rights now in question upon defendant's said farm, in which case, if successful and such compensation paid as may be awarded the defendant, such injunctive protection should be granted the plaintiff as the circumstances may require. In either event let the defendant recover his costs.*