ALICE JANE STODDARD, administratrix *de bonis non cum testamento annexo* of Albert R. Terhune, deceased,

*v.*

JOHN VAN BUSSUM.

[Decided March 30th, 1898. Filed January 4th, 1899.]

1. A decree for foreclosure and sale of mortgaged premises which contains a declaration of the liability of the mortgagor defendant to pay any deficiency which may arise in the sale, is not a decree for the payment of money against which the statute of limitations begins to run.

2. The statute begins to run from the date of the order based on the sheriff's return of the sale showing the deficiency and directing execution for the decree.

---

Heard on bill, answer and proofs.

The object of the bill is to revive and enforce a decree for the payment of money. The defence is the statute of limitations. The question is as to the actual date of the decree. The facts are undisputed.

In October, 1876, James E. Stoutenburgh, administrator with the will annexed of Albert R. Terhune, filed his bill against the defendant, Van Bussum, and wife and others to foreclose a mortgage securing a bond made by Van Bussum to Terhune. Van Bussum was duly served with process, and made no defence. Such proceedings were had in the cause that, on the 6th day of March, 1877, a decree was made in the usual form for the foreclosure and sale of the mortgaged premises by execution to raise the amount due the complainant, with the usual directions to the sheriff to make return to the writ. To this complete decree of foreclosure and sale, the following clause was added:

"And in case the proceeds of such sale shall be insufficient to satisfy and discharge the said mortgage debt, then it is·hereby further ordered, adjudged and decreed that said deficiency shall be made of the lands and tenements, goods, and chattels of the said defendant, John Van Bussum, as specifically prayed in the bill of complaint filed in this cause; it appearing to the court that notice that such relief was sought by said bill, had been duly served and given to said defendant according to law and rules and practice of this court, and that a writ of *fieri facias* therefor do issue accordingly, out of this court, against said defendant for that purpose, payment of the said deficiency being hereby decreed to be made by the said defendant, and that the sheriff make return to this court of his proceedings by virtue of the said writ."

An execution for the sale of the mortgaged premises was duly issued, which was originally tested in March, with a blank for the date, in which the word "March" is erased and the word "May" is interlined, and the date "seventh" written in its proper place (not in the handwriting of Mr. Stoutenburgh, who prepared the writ), returnable on the third Tuesday of May instant. Why its issue was delayed from March to May does not appear. By virtue of that writ the sheriff of Bergen county, on the 19th of September, 1877, sold the mortgaged premises for the sum of $5,955, and by his statement annexed to the writ showed a deficiency of $10,633.03 to satisfy the amount of the decree. The return made by the sheriff does not show when

the writ was actually returned, nor is the date of its filing marked upon it. But on the 16th of October—the word " October" being written over (not in the handwriting of the solicitor) the erasure of the word " September"—the chancellor made an order reciting the previous decree fixing the liability of the defendant to pay the deficiency, and the issuance of execution, and the return of the sheriff showing the deficiency above mentioned, directing that a writ of *fieri facias* issue pursuant to said final decree to levy and make said deficiency, to wit, the sum of $10,633.03, together with interest from the 19th of September, of the goods and lands of the said John Van Bussum, together with the costs of the order and writ.

Under that order an execution was issued against Van Bussum, which produced no results.

An abstract of the order of October 16th was duly docketed in the supreme court on the 17th of October.

Stoutenburgh died on the 6th of March, 1891.

Letters of administration *de bonis non cum testamento annexo* upon the estate of Terhune were duly issued to the complainant on the 17th of May, 1897, and the bill herein was filed on the 23d of August, 1897, more than twenty years after the date of the original decree of foreclosure fixing the liability of Van Bussum to pay the deficiency, but less than twenty years since the actual sale of the premises and the order for *fieri facias.*

Nothing has ever been paid on account of the amount so found to be due.

*Mr. John B. Humphreys,* for the complainant.

*Mr. John Griffin,* for the defendant.

PITNEY, V. C.

The question raised on the case made is somewhat nice, and its solution depends in part upon the construction of certain statutes which I will state.

The fourteenth section of the Limitation act (*Gen. Stat. p. 1975*) provides as follows :

Stoddard v. Van Bussum.

"That judgments in any court of record in this state may be revived by *scire facias*, or any action of debt may be brought thereon within twenty years next after the date of such judgment, *and not after.*"

The fifty-sixth section of the Chancery act (*Gen. Stat. p. 382*) provides as follows :

"That the decree of the court of chancery shall, from the time of its being signed, have the force, operation and effect of a judgment at law in the supreme court from the time of the actual entry of such judgment, *and all decrees and orders of the court of chancery whereby any sum of money shall be ordered to be paid by one person to another shall have the force, operation and effect of a judgment at law in the supreme court* from the time of the actual entry of such judgment, and the chancellor may order such executions thereon as in other cases."

Then follows a provision that it shall not become a lien upon and bind any lands other than those mentioned in the decree until an abstract is filed in the supreme court.

The seventy-sixth section of the Chancery act (*Gen. Stat. p. 386*) provides as follows :

"That it shall be lawful for the chancellor, in any suit for the foreclosure or sale of mortgaged premises, to decree the payment *of any excess of the mortgage debt, above the net proceeds of the sales,* by any of the parties to such suit who may be liable, either at law or in equity, for the payment of the same; provided, that there be a prayer to that effect in the bill of complaint."

Section 110 of the Chancery act (*Gen. Stat. p. 394*) provides as follows :

"That execution may issue, without a revival of the decree, at any time within twenty years from the date of such decree; provided, the parties to the decree, or those of them during whose lives execution may now issue without a revival, be then living," &c.

So far as the fourteenth section of the Limitation act bears upon the question to be dealt with it acts only by analogy. The only difference between that section and the one hundred and tenth section of the Chancery act is that the latter does not, by express language, forbid the issuing of execution after twenty years from the date of the decree; but the force and effect of the

Chancery clause is precisely the same, and, in my judgment, prevents by implication and without the aid of the fourteenth section of the Limitation act the issuing of an execution after twenty years have elapsed.

The character of the decree upon which an execution against the goods and chattels and lands of the defendant may issue is fixed by the fifty-sixth section of the Chancery act, which, in my judgment, limits it to a decree by which an ascertained and fixed sum of money is ordered to be paid by one person to another. Such a decree is declared to have the effect of a judgment at law, and that execution may issue upon it against the property generally of the defendant.

The authority of the court of chancery to make a decree for deficiency against a bondsman in a foreclosure suit like the present—mortgagee against mortgagor—as a part of that proceeding, is found in the seventy-sixth section of the Chancery act enacted March 29th, 1866 (*Nix. Dig. (4th ed.) p. 119*), of which the present section is a transcript, with the added provision " that there be a prayer to that effect in the bill of complaint." This act worked a decided change in the practice, and, it seems to me, added to the power of the court and enabled it to combine and administer a purely legal with an equitable right. Chancellor Kent, in *Dunkley* v. *Van Buren, 3 Johns. Ch. 331*, refused, in the absence of statutory aid, to make such a decree; and Chancellor Green, in *Klapworth* v. *Dressler, 2 Beas. 62* (at *p. 65*), recognized the soundness of that decision, and based the right to relief there given on the ground of the absence of legal remedy. The power of the chancellor to make a decree *in personam* was therefore plainly limited by the act to a decree for a duly ascertained deficiency; and, strictly speaking, as it seems to me, it could not be made until after that deficiency had been ascertained. For *non constat* that there would be a deficiency, and until one appeared the court could not give any judgment or decree. The utmost it could do in anticipation of a deficiency was to simply declare the right of the complainant as against the bondsman defendant, and to that office, as it seems to me, must the *addendum* to the decree for foreclosure and sale in this

case be confined. The decree made use of in this case, which follows the form found in "Dickinson's Forms" and is the usual one, not only declares the liability but attempts to go further by directing that a *fieri facias* issue for the purpose of enforcing the liability of the defendant to pay a deficiency which might never arise, and the amount of which could not as yet be ascertained, and directs the sheriff to make his return of the proceedings under that *fieri facias*. It seems to me that that part of the decree was expletive and quite unwarranted by the seventy-sixth section of the Chancery act.

This view of the law seems to put the true character and essential quality of the decree of March 6th beyond all dispute. It must be held to be purely interlocutory, inchoate and contingent in its character. It resembles the interlocutory judgment at common law under the old practice, where, after reciting that the defendant, though duly summoned, says nothing in bar or preclusion of the action, whereby the plaintiff remains entirely undefended against him, proceeds:

"Wherefore the said plaintiff ought to recover against the said defendant his damages on occasion of the premises, but because it is unknown to the court what damages the said plaintiff has sustained by reason thereof, the sheriff is commanded that, by the oath of twelve men, &c., he diligently inquire what damages the plaintiff hath sustained by reason of the premises, and that he send the inquisition which he will take thereon to our court," &c.,

after the return of which inquisition ascertaining the damages, follows the judgment: "Theretofore it is considered that the said plaintiff do recover against the said defendant his damages, costs and charges so found," &c.

This has been the character allotted to such a decree by the decisions in this state. *Bell* v. *Gilmore, 10 C. E. Gr. 104,* where the chancellor (near the top of *p. 106*) says of a like decree that it was merely a contingent decree, and quotes with approbation the language of a California judge in treating of a similar decree, where he says: "There was no personal judgment for this amount, nor was there anything in the nature of a personal judgment beyond the mere direction for the issuance of the execution in the event of the insufficiency of the mortgaged prop-

erty to pay the debt. The whole matter was contingent, indefinite and uncertain, and so long as this continued to be the case no effect whatever could be given to it."

And again, in *Mutual Life Insurance Co.* v. *Southard, 10 C. E. Gr. 337*, in which the same view is taken (at *p. 339*); and he says that the first decree was, in fact, an inchoate decree merely, and that until the excess, if any, of the mortgage debt over the net proceeds of sale had been ascertained, it could not have the force, effect or operation of a judgment at law; that the power of the court which the statute confers is to make a personal decree for the excess.

The same view is taken by Vice-Chancellor Van Fleet in *Newark Savings Institution* v. *Forman, 6 Stew. Eq. 436* (at top of *p. 441*), and by Mr. Justice Depue in *Dawes.*v. *Wheeler, 16 Vr. 67*, where he holds that a decree like that of March 6th, 1877, in this case was not a decree for the payment of money; and again by Vice-Chancellor Van Fleet in *Mutual Life Insurance Co. of New York* v. *Hopper, 16 Stew. Eq. 387* (at *p. 390*).

But the question is not so much as to the character of the decree of March 6th, 1877, as it is to that of the order or decree of October 16th, 1877. That order recites at length that part of the previous decree of March 6th which declares the liability of the defendant to pay the deficiency, and also recites and adopts the ascertainment by the sheriff of the precise amount of the deficiency and directs that execution issue for that amount. It does not, indeed, in express language, direct or order a certain sum of money to be paid by the defendant to the complainant in accordance with the language of the fifty-sixth section of the Chancery act, but it directs that a *fieri facias* do issue, pursuant to the first decree, to levy and make the sum ascertained as the deficiency. That, it seems to me, should be held to be, in effect, a decree that the defendant pay to the complainant so much money. The order should be read and construed as if the previous direction that the defendant do pay the deficiency when ascertained had been actually written in the decretal part of the order instead of being merely recited. Such was the view taken of a similar decree by the court of errors and appeals in *Roll* v.

Stoddard v. Van Bussum.

*Rea, 28 Vr. 647.* The facts in that case appear more fully in *21 Vr. 264.* There the plaintiff's title depended upon a sale by virtue of an execution issued out of the court of chancery upon a decree for deficiency like that of October 16th, 1877, in this case, an abstract of which decree had never been filed in the supreme court according to the statute, and the question was whether the title thereby acquired was good against a person who had not actual notice of the decree, which had not been docketed in the supreme court. And in answer to that point the counsel for the plaintiff took the ground that the order in question was not a decree for the payment of money such as required that it should be docketed in the supreme court.

In answer to that the learned judge deals with the question thus (at *p. 650*) : " Counsel contends that the proviso [requiring decrees to be docketed in the supreme court] is not applicable because the so-called decree is not really a decree, but is only an order, ascertaining the amount of the deficiency for which Sarah E. Dey was responsible after the sale of the mortgaged premises had failed to realize the mortgage debt. But a sufficient answer to this is that section 76 of the same statute, which confers upon the chancellor the authority to make such an adjudication, speaks of his judgment as a decree, and it is reasonable to conclude, in the absence of clear indications to the contrary, that the same terms express the same sense throughout the statute. In substance, also, the adjudication is a final decree, settling definitely and conclusively the obligation of the defendant."

Such order was also held to have the force and effect of a judgment by the supreme court in the case of *Mutual Life Insurance Co. of New York* v. *Newton, 21 Vroom 571,* and to be a bar to an action at law on the bond, on the ground that it was merged therein.

My conclusion is that the order of the 16th of October, 1877, was in effect an order for the payment of a specific sum of money, and as such fixed for the first time the rights of the parties ; that upon general principles the statute of limitations did not commence to run until it was signed.

There is nothing in the case to indicate that the proceeding

was unduly delayed, or that the last decree was not obtained as soon as practicable. It is well known that the sheriff could not, in the ordinary course of business, receive the purchase price until several days after the sale, and could not properly report the deficiency until he had received it.

I will advise a decree that the defendant do pay to the complainant the amount of the deficiency fixed by the order of October 16th, 1877, with interest to be added to the date of the decree, with the costs of this suit, and that a *fieri facias* do issue to levy and make the money.