CHARLOTTE SARGENT, et al. *v.* EDNA BURTON, et al.

October Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, WATSON and
STAFFORD, JJ.

Opinion filed November 29, 1901.

*Conveyance in consideration of support—Evidence of mental
capacity—Non-expert opinion—Trial before master—
Presumptions.*

In a proceeding involving the question of a grantor's mental capac-
ity, evidence that he subsequently told of the conveyance and
recited its terms, is admissible.

As a general rule, an improper answer to a proper question does not
vitiate; and on an appeal in proceedings tried before a special
master, it will be presumed that the master did not consider the
non-responsive part of a witness' answer.

Exceptions to a master's report not founded on objections made be-
fore the master, will not be considered in the appellate court.

A witness who had, for a long time, known the grantor whose mental
capacity is questioned, having detailed a conversation had with
such grantor, may thereon predicate an admissible opinion of his
mental condition.

In proceedings tried before a special master, if the admissibility of
testimony depends upon a proper foundation being laid, the ap-
pellate court will assume, in the absence of a contrary showing,
that such foundation was laid.

APPEAL IN CHANCERY. Heard on master's report and
exceptions thereto at the June Term, 1901, Windsor County,
*Start,* Chancellor, presiding. Decree overruling the excep-
tions and dismissing the bill. The orators appealed.

The bill is brought by Prosper B. Slack's heirs-at-law
and the representatives of such, against Edna Burton, grantee,
and Charles B. Stone, administrator of said Slack.

*Gilbert A. Davis* for the orators.

The statements made by Prosper B. Slack to the different witnesses relative to his trade with Mrs. Burton, should have been excluded.   They were received as evidence that such a trade had been made.   This should have been proved by the deed itself.

The opinion which George Messenger expressed, that Slack "was competent to make the writings," was clearly improper. This was the very question which the master was to decide.   *Beemis* v. *R. R. Co.,* 58 Vt. 636; *Weeks* v. *Lyndon,* 54 Vt. 638; *Carpenter* v. *Corinth,* 58 Vt. 214; *Foster's Ex'rs* v. *Dickerson,* 64 Vt. 248.

The opinion of Samuel Armstrong should have been excluded.   No foundation for an opinion was laid.   The master finds that he "was an old neighbor," but shows no knowledge of the mental condition of Slack on which to base an opinion.

The report discloses no foundation for Granville Slack's opinion or that of Lester Ray.

The declarations of Prosper Slack made after the delivery of the deed, were inadmissible.   *Brackett* v. *Wait,* 6 Vt. 411; *Edgull* v. *Bennett,* 7 Vt. 534; *Spaulding* v. *Albin,* 63 Vt. 153; *Crocker* v. *Chase,* 57 Vt. 413, 420.

*J. C. Enright* and *H. H. Blanchard* for the defendants.

Prosper Slack's statements regarding the trade were admissible on the question of mental capacity.   They were received for that purpose.

The improper part of Messenger's answer was given without the fault of the examiner.   No objection was made to it before the master.   No advantage can be taken of it here. *Randolph* v. *Woodstock,* 35 Vt. 291; *Frary* v. *Gusha,* 59 Vt. 257; *Lawrence* v. *Graves,* 60 Vt. 657.

The opinions of Slack's mental condition came from old acquaintances who saw and talked with him about the time of the execution of the deed, and were admissible.   *Foster's*

*Ex'rs* v. *Dickerson,* 64 Vt. 244; *In re Blood's Will,* 62 Vt. 364; *Chickering* v. *Brooks,* 61 Vt. 554; *State* v. *Hayden,* 51 Vt. 296.

ROWELL, J.    This is a bill to set aside a deed from father to daughter, and an agreement between them for his life support by her, made at the same time and as a part of the same transaction, for that he had not sufficient mental capacity to execute them.

The master admitted testimony to show that soon after the transaction, the grantor said he had made a trade with his daughter to take care of him; that she was coming up to take care of him during life; and that he had given her all he had except his team, which he was going to have himself.

It does not appear for what purpose this testimony was admitted.    But if it was admissible for any purpose, its reception was not error; and that it was admissible on the question of mental capacity, cannot be doubted.    Thus, in *Howe* v. *Howe,* 99 Mass., at page 98, it is said that evidence that a grantor remembers what he has done, and afterwards speaks of it, and does not express regret nor dissent, is admissible to show that he understood his act at the time, and that he ratifies it.

The draftsman of the papers—an old neighbor of the grantor's—testified to his long and intimate acquaintance with him; and after describing his condition, and stating what was said and done 'when the papers were made and executed, he was asked, against the orator's objection, from what he saw of the grantor at the time to which he had testified, what the condition of his mind was,—whether sound or unsound,— and answered, that to all appearance he should say he knew what he was about and what he wanted when the papers were made, and that he should say "he was competent to make the writings."    This last statement is now objected to as inad-

missible and vitiating. But it was not responsive to the question, which was proper, and was not the fault of the examiner nor of the master; nor was it objected to before the master.

As a general rule, an improper answer to a proper question does not vitiate. In jury trials, if it affirmatively appears that the court instructed the jury to disregard the answer, the difficulty is cured; and if it does not so appear, it will be presumed that the court gave such instruction, for that was its duty. It is said in *Houston* v. *Russell,* 52 Vt., at page 117, that though it should affirmatively appear that the court did not so instruct, this court would be reluctant to reverse the judgment unless the excepting party requested such instruction.

The proceedings of referees are presumed to be correct, both in matters of law and of fact, and the party seeking to set them aside must show error. *Martin* v. *Wells,* 43 Vt. 428.

The same presumption should be made in favor of the proceedings of special masters, and therefore we presume that the master in this case did not consider the objectionable part of the answer. *Chickering* v. *Brooks,* 61 Vt. 554, 18 Atl. 144, is much to the same effect. And besides, as the court above will not consider questions that were not presented to the court below, correct practice forbids exceptions to a master's report that are not founded on objections made before the master,— a practice "founded in much good sense," Chancellor Kent says, and "one not departed from except in special cases." *Church* v. *Jaques,* 3 Johns. Ch. 77; *Byington* v. *Wood,* 1 Paige, 145; *Copeland* v. *Crane,* 9 Pick. 73; *Story* v. *Livingston,* 13 Pet. 366, 10 L. Ed. 200. Lord Chief Baron Gilbert says that was the ancient rule in England, and that "it were to be wished that this good rule was strictly followed, since, if the party had objected, he might have shown the master his error, and the report would have been altered in that particu-

lar and never troubled the court." In 1683, Lord Keeper North promulgated that rule, and it has remained the rule ever since, with little variation. 2 Daniell Ch. Pl. & Pr., 2d Am. Ed., 1534, 1535; *Ottey* v. *Pensam,* 1 Hare, 322.

Armstrong's testimony that at the time of a certain conversation he had with the grantor, his mental condition was as good as it ever was, did not contravene the rule that a non-expert witness may give his opinion of a person's mental condition, based upon permissible things to which he testifies. The report says that Armstrong was "an old neighbor" of the grantor's, which we understand to mean that he had known him for a long time. He detailed the conversation, and then gave the opinion objected to. *Foster's Ex'rs* v. *Dickerson,* 64 Vt., at page 244, 24 Atl. 255.

Granville Slack testified to what the talk was in the grantor's presence, as far as the grantor took part in it, in regard to what the trade was with his daughter. The witness was then allowed to give his opinion of the grantor's mental condition at the time, and said he saw no difference from what it was when Frank Sargent was there, nothing but that he was perfectly sound.

It is objected that the report does not show any foundation for such an opinion, as it does not show that the witness knew anything about the grantor when Frank Sargent was there. But as we are not to presume error, it must be taken that it appeared before the master that the witness did know something about the grantor when Frank Sargent was there.

Lester Ray's testimony as to the mental condition of the grantor was proper, as it evidently referred to the spring of 1895, which was the spring the papers were made.

The other contentions of the orators are not sustained. Some of them are based upon objections to testimony not made

by the exceptions to the report, and some, on erroneous state-
ments of the purpose for which the testimony was admitted.

*Affirmed and remanded.*