S.  A. FIFE AND F. R. CHILD *v.* W. W. CATE AND ALMA A. CATE.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed February 9, 1912.

*Reformation of Instruments—Grounds of Denial—Relief by In-junction—Evidence—Degree of Proof— Equity—Jurisdiction —Disposition of Whole Controversy—Remedy at Law—Weight of Evidence—Necessity and Sufficiency of Objections and Exceptions—Objections not Made Below—Declarations Accompanying Acts—Harmless Error—Findings—Sufficiency— Costs on Enjoining Suits at Law—Laches—Review—Questions not Raised Below—Pleading in Equity—Defences—Necessity of Alleging.*

A written contract cannot be reformed to conform to an oral agreement from which it differs  because of an alleged mistake, where there is no evidence that one of the parties had any knowledge of the terms of the oral agreement, except the facts that she signed the written contract, and, before it was signed, her solicitor knew the terms of the oral agreement, but did not participate in making it, and had no authority from her to do so, for the alleged mistake in the written contract was not mutual, which is essential to reformation on the ground of mistake.

One's general authority as a solicitor in a suit does not authorize him to settle it.

Where a wife had a homestead interest in part of the land involved in foreclosure proceedings against her and her husband, she was not a mere nominal party to a written contract settling the controversy and releasing any claim or interest that the other parties might have in property sold or disposed of by the husband and wife or either of them, and so, the written contract could not be reformed to conform to an oral agreement that the release clause should apply only to property wrongfully disposed of, where the wife had no knowledge of the terms of the oral agreement, for the requisite mutuality of the mistake was lacking.

To entitle a party to any kind of equitable relief against the legal effect of a mistake in a written contract, the mistake, and that it was mutual, must be found beyond a reasonable doubt, and so a mandate of this Court directing the dismissal of a bill for the reformation of a written contract on the ground of mistake, and for other relief, unless the mistake be found beyond a reasonable doubt, does not preclude the granting of such other relief after the mistake is so found, though, for other reasons, reformation cannot be decreed.

To make a bill in equity multifarious as to matter, the alleged causes of action must have no connection nor common origin, but must be separate and distinct, and so a bill that, in addition to asking for reformation of a written contract that settled all matters of dispute between the parties, also asked for an adjustment and settlement of those matters, is not multifarious.

A bill in equity for adjusting by decree the business relations of the parties should not be dismissed on the ground that orators have an adequate remedy at law, where it shows that, because of a mistake against which equity will relieve, defendant could wrongfully avail himself at law of a written contract settling those relations.

To entitle a party to reformation or other equitable relief against a mistake in a written contract, the evidence must be such as to warrant the finding beyond a reasonable doubt that the written contract does not express the final intention of the parties, but the requirement is not that the mistake be shown by evidence that will leave no room for opposing inferences as to whether there is any reasonable doubt about it, and so make the issue a question of law.

On appeal in a suit in equity for relief against a mistake in a written contract, this Court will examine the evidence to see whether it is legally sufficient to sustain the findings to the requisite degree of certainty.

Exceptions to a chancellor's report for errors in the admission of evidence not based on objections made at the trial will not be considered on appeal.

A party will be confined in the Supreme Court to the objection that he stated below.

An available exception to the report of a chancellor must specify both the matter excepted to and the ground of the exception.

In a suit in equity for reformation of a written contract, the orator was properly allowed to testify as to what he understood the clause in question to mean.

Where a written contract was drafted as signed before certain letters relating to the subject-matter thereof began to pass between the parties, those letters were not negotiations leading up to the making of the contract, and so they could be contradicted by parol.

Objections to the admission of testimony which do not state the grounds of the objection will not be considered on review.

On the issue as to what were the terms of an oral contract, a party, who had testified to the conversation constituting the contract, was prop-

erly allowed to give his understanding thereof based on the talk as he had related it.

In a suit in equity to reform a written contract to conform to an oral agreement, an objection to the admission of testimony of a conversation claimed to have constituted the oral agreement, that it occurred some three weeks before the written contract was signed, was properly overruled, as not indicating to the chancellor any point on which he was expected to rule.

To render a declaration admissible as accompanying a material act, and tending to explain it, the principal act must be independently material and provable.

Errors in the admission of evidence and in the findings based thereon are harmless where the issue to which they relate is eliminated.

The refusal of a chancellor to make a requested finding is not error, where the importance of the finding is not suggested and does not appear.

It is not error for a chancellor to refuse a request to report all the facts and circumstances on which he based an ultimate finding, and, if such facts and circumstances were already reported, to say so.

It is not error for a chancellor to refuse a request that, if he fails to find certain facts, he report what use he made of designated uncontradicted testimony tending to establish them, for the presumption is, nothing appearing to the contrary, that he made a legitimate use of such testimony.

The failure of a chancellor to comply with defendant's request to report a designated admission claimed to have been made by orators' solicitor on cross-examination, and to find the fact to be as admitted, because defendants were entitled to the benefit of the admission, is not error, where it does not appear that defendants did not have the benefit of the testimony referred to, as the presumption is that they did.

Where a written contract cannot be reformed to conform to an oral agreement because one of defendants who signed the contract had no knowledge of the terms of the oral agreement, injunctive relief may be granted as against the other party, and all persons claiming under him, by restricting the use and operation of the written contract so as to accord with the oral agreement, and restraining the prosecution of suits involving matters settled by the oral agreement.

Where a court of equity has jurisdiction of a case for one purpose, it will retain it for all other purposes and dispose of the whole matter, and so, in a suit to reform a written contract to conform to an oral agreement and to enjoin the prosecution of actions at law involving the matters settled by the oral agreement, the court will take jusridiction of, and determine the issues involved in, the actions sought to be enjoined, and perpetually enjoin such as violate the oral agreement.

In a suit in equity to reform a written contract to conform to an oral agreement to which it is duly found it should conform, and to enjoin the prosecution of actions at law brought in violation of the terms of the

oral agreement, where it appears that one of those actions was brought by a party to the contract and a third party, and involves matters settled by the oral agreement, and that the interest of the third party existed when the oral contract was made, that action at law will be enjoined, but the third party will be permitted to litigate the matters therein involved in the suit in equity for his own benefit, but not for the benefit of the party to the contract.

In a suit in equity to enjoin actions at law, the orators are awarded their costs in the law actions only up to and including the first term, and ordered to pay the costs of defendants therein after the first term, for they should have resorted to chancery sooner.

Where, on appeal, a bill in equity is dismissed, and no reason is shown why defendants should not have costs below, those costs will be awarded by this Court.

On appeal in equity, a fact relied on in defence, but concerning which there is no finding, will not be considered.

Where a defendant in equity makes defence by way of answer he must therein allege all the grounds of defence on which he intends to rely.

APPEAL IN CHANCERY, Lamoille County, *Stanton,* Chancellor. Heard in vacation after the June Term, 1910, and after remand of the case as reported in 84 Vt. 45, on the pleadings and original finding of facts by the Chancellor, supplemented by his further findings based on the evidence originally taken. Decree reforming the written contract in question and perpetually enjoining the prosecution of certain suits at law. The defendants appealed. The opinion states the case.

*R. M. Harvey, J. W. Redmond* and *R. W. Hulburd* for the orators.

*Harry Shurtleff* and *B. E. Bullard* for the defendants.

ROWELL, C. J. This case has been here before, as shown by 84 Vt. 45, 77 Atl. 947. It is a bill in chancery to reform a written contract of settlement of a long course of dealing between the orators and the defendant Cate in a lumber business involving several hundred thousand dollars, and for an injunction against the further prosecution of certain actions at law. The case was sent back then because the parol agreement to which the writing is sought to be conformed was not found beyond a reasonable doubt.

It is now found beyond a reasonable doubt that said parol agreement was, and was mutually intended by the parties thereto to be, a complete settlement of all the matters and differences then pending between the orators on one side and Cate and wife on the other side, who are the only parties to the written contract, in which the part sought to be reformed is this: "And the parties of the first part further agree, jointly and severally, to relinquish any claim, right, or interest by way of mortgage or otherwise, that they or either of them have in or to any property, real or personal, or the proceeds thereof, that may have been sold or disposed of by the parties of the second part or either of them previous to the date" of the contract.

It is found that it was the intention of the parties to said written contract that said quoted clause should be inserted therein, and that it was inserted therein, for the sole purpose of carrying out the parol stipulation to relieve Cate from any liability for having *wrongfully* disposed of certain property, as the orators claimed he had.

Though it is found that Mrs. Cate was not present when the parol agreement was made, yet the chancellor makes her a party thereto because, he says, she was there represented by her husband and her solicitor, both of whom agreed, acted, and did in her behalf as theretofore found by him. But he says that he had nothing before him on which to make a finding as to her actual knowledge of the terms of that agreement, except the fact that she signed the written contract; and nothing on which to base a finding as to what authority, if any, she actually gave her husband or her solicitor to settle the foreclosure case to which she was a party, in which alone, of all the matters and things included in said agreement, she had an interest, and that interest, it appears, was a homestead interest in premises covered by one of the mortgages then being foreclosed.

But the fact that Mrs. Cate signed the written contract is no evidence that she had actual knowledge of the terms of the parol agreement that were different from the written contract; and as the chancellor says that he had nothing before him on which to base a finding as to her actual knowledge except such signing, it must be held that she had no such knowledge, nor any other knowledge, unless it be said, as claimed by the orators,

that the knowledge of her solicitor is her knowledge in law, or that the circumstances are such as to warrant the inference that he communicated to her his knowledge, which was full and complete. But it cannot be said as matter of law that his knowledge is her knowledge, because, for one thing, it appears by the former report that he did not participate in the making of that agreement, and was not present when it was made, and knew of it only by being told after it was made. And even if he had represented her in its making, as it is claimed he did, virtually, he would have been acting beyond the scope of his authority, for no special authority to do that is found, without which he had none at all, for his general authority as solicitor gave him none.

Nor can the inference be indulged from the circumstances that either he or her husband communicated their knowledge to her, for it was for the chancellor to draw that inference if it could be drawn, which he has not done, but has, instead, precluded the idea of such an inference by saying that he had nothing before him on which to base a finding as to her actual knowledge except the fact that she signed the written contract, which, as we have said, is no evidence of actual knowledge of the terms of that agreement that differed from the written contract. It must be held, therefore, that she had no knowledge of those terms, neither in law nor in fact. This being so, it follows that her mind never met the minds of the orators as to those terms, and that the mistake in the written contract in respect thereof is not mutual between them, which is essential to reformation.

But it is said that this does not preclude reformation, because Mrs. Cate is only a nominal party, the interest of the whole subject-matter being in her husband; or, if that is not so, that he alone is interested in the part sought to be reformed. It cannot be said, however, that she is only a nominal party, for, as we have said, she had a homestead interest in the premises covered by one of the mortgages being foreclosed, and consequently was a necessary party to the foreclosure of that interest, and was in fact a party to that proceeding, and therefore the whole interest in the subject-matter of the contract was not in her husband, as claimed, but was partly in her, for that

proceeding was being settled thereby. Nor is he alone interested in the part sought to be reformed, for that part runs to her as well as to him, and relinquishes any claim, right, or interest by way of mortgage or otherwise that the orators or either of them have in or to any property, real or personal, that may have been sold or disposed of by them or either of them previous to the date of the contract. She is entitled to have this part of the contract stand for her protection, for she may have sold or otherwise disposed of property or participated therein in a way to subject herself to claim by the orators if not to make herself liable to them.

This part of the contract cannot, therefore, be reformed as to her, and consequently cannot as to him, for reformation as to him would cut out what she is entitled to have remain.

This being so, the defendants claim that inasmuch as the mandate sent down before directed that the bill be dismissed unless it was found beyond a reasonable doubt that the verbal agreement was, and was mutually intended to be, a full and complete settlement of all matters and differences between the orators on one side and Cate and wife on the other, —all questions outside of reformation have been disposed of. But this is hardly so, for a finding to that degree of certainty is essential to any relief against the written contract on the ground of mistake, for equity will not allow its legal effect to be changed by parol on a mere preponderant finding any more than it will allow its terms to be altered thereby, but the finding must be beyond a reasonable doubt. This is so held in *Fairbanks* v. *Harvey*, 83 Vt. 283, 75 Atl. 268, where it is said that whether the written instrument be corrected, or its enforcement restricted by injunction, to conform to the real agreement made by the parties, the effect is a reformation of the instrument, and that the evidence showing the essential elements of the mistake must be of the same conclusive character.

It stands for consideration therefore, whether any and what relief can be granted other than reformation. But before taking up this question, we must consider objections made to the sufficiency of the bill and other questions raised below.

In addition to asking for reformation, the bill asks for an adjustment and a settlement of all matters and things between

the parties that were connected with, grew out of, or were a part of, the business deal in the bill mentioned, and for a reformation of the written contract to that end.

The defendant Cate objects by demurrer that this makes the bill multifarious because it joins two distinct and different causes of action, namely, reformation of the contract and settlement of said business relations.

Now an essential element of multifariousness as to matter is, that the causes of action must have no connection nor common origin, but must be separate and distinct. But here the causes of action are not separate and distinct, but are so closely connected that reformation would accomplish the settlement asked, and it is prayed for to that special end. The bill, therefore, is not multifarious.

The defendant Cate in like manner objects that the orators have an adequate remedy at law as to the allegations and prayer of the bill for adjusting by decree the business relations of the parties, as to which, he says, he is entitled to a trial at law and by jury. But the orators have not an adequate remedy at law in respect of that matter if Cate can avail himself of the settlement contract as written, for that gives him rights against the orators that the bill shows he ought not to have, but which they could not prevent his having at law, for there they could neither vary the terms of the writing nor limit its legal effect. This is an answer to the cognate claim of a right to a trial by jury, and also makes it unnecessary to consider whether there is jurisdiction, as claimed by the orators, on the ground of multiplicity of suits. The question of taking jurisdiction of the whole when there is jurisdiction of only a part, is passed over for the present, to be taken up later if necessary.

The defendants contend that the evidence was not legally sufficient to warrant the finding of what the parties to the parol agreement settled and intended to settle thereby, nor legally sufficient to warrant the finding that the written contract was designed to effectuate that settlement and intent, but failed by mistake to do it. This contention is based upon what it is said this Court has settled the law to be as to the measure of proof and kind of evidence necessary to reform a written instrument, namely, that the mistake must be undeniably

proved—*Beardsley* v. *Knight,* 10 Vt. 185, 190, 33 Am. Dec. 193; must be proved as much to the satisfaction of the court as if it were admitted, and by strong, irrefragable evidence— *Goodell* v. *Field,* 15 Vt. 448, 452; must, as Judge Redfield says in his edition of Story's Eq. §157, be shown by proof that will strike all minds alike as being unquestionable and free from reasonable doubt. Fastening upon what the judge thus says, counsel claim that if the evidence must be such as to strike all minds alike, then the court determines the question as matter of law; and this is so, logically, taking those words by themselves. But they are not to be taken by themselves, and the judge did not so intend, for he adds, "and free from reasonable doubt." Then he goes on to say that this distinction is much the same that exists between civil and criminal cases, or the distinction expressed by a fair preponderance of evidence and full proof, which latter distinction we do not recognize in this State. *Bradish* v. *Bliss,* 35 Vt. 326.

In the very section in which Judge Redfield incorporated what he had to say, Judge Story makes some practical remarks about the rule and its administration when he says that relief will be granted in cases of written instruments only when there is a plain mistake clearly made out by satisfactory proof; that it is true that this, in one sense, leaves the rule somewhat loose, as every court is still left free to say what is a plain mistake and what is satisfactory proof; but that this is an infirmity incident to the very administration of justice, for in many cases, judges will differ as to the weight and result of evidence, and consequently may make different decisions upon the same evidence; but that the qualification of the parol evidence rule insisted upon by courts of equity is most material, since it cannot fail to operate as a weighty caution upon the minds of all judges, and forbids relief whenever the evidence is loose, equivocal, or contradictory, or is in its texture open to doubt or opposing presumptions. But by this last language, not carefully chosen, the author means no more than that the mistake must be made out by evidence clear of reasonable doubt, as is shown by his note to the text in which he refers to what Lord Thurlow said in *Shelburne* v. *Inchiquin,* 1 Bro. Ch. [*341], namely, that the evidence must be "irre-

fragable," and says that if by this language his Lordship meant only that the mistake must be made out by evidence clear of all reasonable doubt, its accuracy need not be questioned; but if he meant that it should be in its nature or degree incapable of refutation so as to be beyond any doubt and beyond contro-versy, the language is too strong.

So in *Fowler* v. *Fowler*, 4 De G. & Jones, *264, Lord Chelms-ford says that if Lord Thurlow used the word "irrefragable" in its ordinary meaning, to describe evidence that cannot be refuted nor overthrown, his language would require some quali-fication; but that he probably meant that the mistake must be proved by something more than the highest probability, and that the evidence must be such as to leave no fair and reasonable doubt upon the mind that the deed did not embody the final intention of the parties. And that is the rule in this State.

It comes to this, then, as Judge Story says, that in every case it is for the court to say whether there is a plain mistake and what is satisfactory proof of it; and on this question it cannot be said that the evidence must be such as to strike all minds alike; must not be contradictory; must be irrefragable, and the like, of which the books are full, for such language is too strong, and goes beyond the true idea of the law, which is the same here as elsewhere when the same degree of certainty is required, namely, that the evidence legitimate to that end must be such, taken in whole, as to exclude all reasonable doubt. This, indeed, is the only way the issue can be tried, and when thus tried, much of the confusion and uncertainty consequent on inconsiderate and too strong language is removed. And this Court will, of course, look into the evidence to see whether or not it is legally sufficient to sustain the findings to the requisite degree of certainty. If it is, the findings stand, if otherwise warranted. If it is not, they fall. Here we are fully satisfied that the evidence is amply sufficient in law to sustain the findings to the required degree, for it is past believing that the orators and Cate agreed, as the written contract shows they did, upon the sum of $20,000 as due in equity on the mortgages being fore-closed, for which sum a decree was entered and became absolute, under which and the settlement the property received by the orators was worth no more than $9,000 and at the same time

left unsettled other things pertaining to the subject-matter of that settlement to the amount of $20,000 more, as the defendants' claim they did, for the recovery of which the suits at law in the bill mentioned were afterwards brought and are still pending, though enjoined herein. This, it should seem, ought to strike all minds alike as incredible.

The only objection now made to the testimony of Waite, called by the orators, was not made below and therefore cannot be made here, for correct practice forbids exceptions to the chancellor's report for error in the admission of evidence not based on objections made at the trial. *Sargent* v. *Burton*, 74 Vt. 24, 52 Atl. 72.

The defendants say that as the orators had ample opportunity to examine, and did examine, the written contract before signing it, and were told by Cate that it was that or nothing, they ought to have seen, and but for their own negligence would have seen, that it did not effectuate the verbal agreement as they understood it, and that therefore, and if the minds of the parties did not meet at the time of signing, there can be no relief. But it is found that the minds of the orators and Cate did then meet, and as for negligence, there is nothing before us whereby we can say as matter of law that there was any, especially any that will stay the hand of the court.

The orators' witness Stevens testified to what he said Cate told him about having settled up his business with the orators. The defendants seasonably objected that it was immaterial and had nothing to do with the case. The only objection now made to it is, that it went outside of what Cate actually said, and allowed the witness to give a mental interpretation of the testimony. This objection not having been made below, cannot be made here.

The defendants say that all exceptions to the findings that the orators and Cate agreed to settle all matters then pending between them, should be sustained because based on contradictory testimony. But the question of the character of testimony in this repect has been considered already; and besides, these exceptions are not entitled to consideration as such, because they specify no ground on which they are based, Chancery Rule 38 being that exceptions to a report shall briefly and clearly

specify, not only the matter excepted to, but the ground of exception as well. And the same is true of the exception to the finding that Cate's solicitor was told before he drew the contract that it was to settle all matters between the parties; and of the exception to the finding that the intent of the solicitor in drawing the contract was to settle all matters.

The defendants excepted to the receiving in evidence in each and every instance set forth, the testimony of the orator Child when received subject to their objection. Under this exception they now claim that the testimony of the witness as to what he understood the clause in question in the written contract to mean was inadmissible, and that therefore the exception should be sustained. But to say nothing of the fact that the objection to that testimony was general, the testimony was admissible as tending to show the fact of mistake and in what it consisted. *Goodell* v. *Field*, 15 Vt. 448; *Barry* v. *Harris*, 49 Vt. 392; 2 Pom. Eq., 10th Ed. §859.

It is further claimed under this exception that it was error to allow Child to testify that by the oral agreement the orators were to pay Cate $500 to settle everything between them, because, it is said, it was contradictory of the letters that passed between the solicitors before the written contract was signed. But those letters were not negotiations leading up to the making of the written contract, as claimed, for it was drafted as signed before those letters began to pass, except that the $500 called for by the verbal agreement was, as all agree, changed to $700 before the writing was signed, and so Child's testimony was not contradictory of those letters, and no right nor liability depended upon their terms.

The report is excepted to for receiving in evidence in each and every instance set forth, the testimony of the witness Redmond when received subject to the objection of the defendants, no ground of exception being specified. And besides, the objections to the admission of the testimony are general, no ground being stated. It is now urged against its admission that it contains argument, inferences, conclusions of law and of fact, construction and interpretation of written correspondence and of the contract in question, and even of testimony. These generalities illustrate the utility and even the necessity of the

rule referred to, and the exception is not considered. Nor is the exception to the admissions of Fife's testimony, for no ground of exception is stated; and on looking at the "setting forth" therein referred to, it does not appear, as now claimed, that the witness was allowed to state his conclusion that everything was settled instead of telling what was said, but it appears that the testimony was offered and received subject to objection, to show what the "talk" was between the orators and Cate when the verbal settlement was made, which talk, the "setting forth" says, was to the effect that the settlement was to include everything. But the offer was to show the "talk," and it should seem that the talk was shown, and the statement of its effect looks more like the chancellor's than the witness', but if the witness', it amounts to no more than giving his understanding of the settlement based upon the talk as he had related it, and that was admissible. Thus, in *Linsley* v. *Lovely*, 26 Vt. 123, 135, a participant in the purchase of goods was allowed to testify how he understood the contract as to the time of credit, but not how the other party must have understood it. So it is said that testimony as to what the witness understood or supposed, has been received when it really expresses his knowledge and recollection of what was said or done or agreed upon. Steph. Dig. Ev., Chase's Ed., 176, note.

The defendants also objected below that said talk took place some three weeks before the contract was in fact signed. It is now claimed under this objection that the intent, even if it existed at that time, is not shown to have continued to the time of signing, and consequently that the testimony was immaterial. But the objection did not indicate to the chancellor any point on which he was expected to rule, and so was insufficient. And besides, the intent *is* shown to have continued to the time of signing, for the defendants' solicitor who drew the contract testified that when he first drew it with the $500 in it, he drew it to embody the terms of the oral agreement as communicated to him by the defendant Cate, and the contract when signed stood as it did when first drawn, except that the $500 was changed to $700. But, of course, the parties differed as to what the terms of the oral agreement were, the defendants claiming that the written con-

tract correctly embodied them, except as to the $700, and the orators claiming that it did not as to the part sought to be reformed.

It became and was material for the defendants to show that Cate forbade the orators to ship or to take certain lumber in the millyards, and he testified that he forbade them immediately after being told to by his counsel. To support him in this behalf, the defendants offered to show that when he left his counsel's office on the occasion of being thus told, he said he was going to notify them or to forbid their selling the lumber. This was offered as a part of and accompanying his act of leaving the office. The report is excepted to for the exclusion of this offer which, it is claimed, was an offer of a declaration accompanying a material act, and tended to elucidate and explain it. But the exception is not well taken, for to make such a declaration admissible as part of the act it accompanies the act itself must be independently material and provable under the issues, either as a fact directly in issue or as incidentally or evidentially relevant to the issue, the use of the words being wholly subsidiary and appurtenant to the use of the act. 3 Wig. Ev. §1773. This is substantially what is said in *State* v. *Ryder*, 80 Vt. 422, 68 Atl. 652, where we said that such declarations derive credit and importance as forming a part of the transaction itself, and are included in the accompanying circumstances, which may, as a rule, be given in evidence with the principal fact; but that there must be a principal fact or transaction, and only such declarations are admissible as grow out of it, illustrate its character, are contemporaneous with it, and derive some degree of credit from it. The principal fact or transaction there meant is, of course, one that is itself admissible independently of any accompanying declarations. But here there is no such principal fact, for the act of leaving the office was not independently material and provable under any issue in the case, but was an indifferent act and a thing of course.

The defendants excepted to the admission in evidence of each and every of eighteen designated exhibits, no ground of exception being specified. They now say that the admission of those that had nothing to do with reforming the contract was error for reasons stated regarding the demurrers. But they

do not indicate which those exhibits are. They also say that the same thing may be said of the findings that the orators and Cate did business under the contract of January 28, 1903, rather than under the verbal contract claimed by Cate; also of the findings that the orators owned the lumber in question, and that Cate had wrongfully disposed of some of it; and of all other findings that do not have to do with the reformation of the contract; and that the same may be said of the findings as to the defendant Towne. But none of these exceptions specify any ground of exception, and under the claim now made of these findings having nothing to do with reformation, and reformation being denied, the admission and findings must be treated as harmless.

The defendants also excepted to the refusal of the chancellor to comply with each and every of thirteen of their designated requests. One request was, to report the phone conversation between one of their solicitors and the orator Child, reciting it. They do not now complain of the chancellor's failure to report that conversation, but only that he should have found the fact to be that it was had over the phone, as it was admitted to have been. But whether any and what importance is attached to having that fact found is not suggested and does not appear.

Another request was, to report all the facts and circumstances on which the chancellor predicated his finding to the effect that the parties intended to settle every matter of deal between them, and if such facts and circumstances were already reported, to say so. But non-compliance with this request was not legal error. *Winship* v. *Waterman*, 56 Vt. 181; *Allen* v. *Allen*, 79 Vt. 173, 64 Atl. 1110.

It follows from this that there was no error in not complying with the request to state that there were no facts nor circumstances tending to show the intent of the parties other than those reported. Nor any in not reporting by what evidence or facts the chancellor found the intent of Cate and wife at the time of executing the contract to be different from that expressed in their solicitor's letters.

Nor were the defendants entitled to a compliance with the request to report whether verbal testimony as to said intent of Cate and wife was weighed in contradiction of the terms of said letters, for if it was, it was not error, as the letters do not

come within the parol evidence rule; and besides, the orators are not parties thereto.

Non-compliance with the requests that if the chancellor failed to report certain things to be true, he should report what use he made of certain uncontradicted testimony tending to show them true, does not vitiate; for the presumption is, nothing to the contrary appearing, that he made legitimate use of it. *Sargent* v. *Burton*, 74 Vt. 24, 52 Atl. 72. And besides, to require the trier to state what particular use he made of such and such pieces of evidence, would, as a rule, be intolerable.

The defendants requested the chancellor to report an admission claimed to have been made by the orators' solicitor on cross-examination, to the effect that he had no reason to think but that the defendants' solicitor meant what he said in his letter of such a date, and to find the fact to be so, because the defendants were entitled to the benefit of the admission. It is enough to say of this request, which was not complied with, that it does not appear that the defendants did not have the benefit of it, whatever it was, and the presumption is that they did.

The same may be said of the request to report the testimony of the orators' solicitor as to what the mistake complained of was, because the defendants were entitled to the admission.

The result thus far is such that it is necessary to consider whether any and what relief can be granted against the written contract, and we think it clear that injunctive relief can be granted as far as Cate is concerned, and all persons claiming under him, by restricting its use and operation in respect of relinquishing claims, rights, and interests, so as to accord with the true intent and meaning of the parol agreement in that respect as it is found to be.

Thus, in *Mower and Graham* v. *Hutchinson*, 9 Vt. 242, the orator Mower and the defendant were tenants in common of land that they partitioned by mutual deeds. Mower had a right of flowage therein, as the defendant knew, but by mistake his deed did not reserve it, though neither contemplated its conveyance nor impairment. Mower subsequently conveyed his part to the orator Graham, whom the defendant sued for flowing his part, and on trial he gave in evidence and relied upon his deed from Mower as conveying or extinguishing the right

of flowage, and upon that evidence obtained a verdict; but Graham reviewed, and the case was still pending. It was held that the orators were entitled to a decree, enjoining the defendant at all times thereafter in any future trial that might be had in that case or in any other that might be thereafter commenced, from offering or relying upon Mower's deed to him as relinquishing, extinguishing, or in any way affecting or impairing, said right of flowage. There, it is to be noticed, the deed was left to operate as the parties thereto intended it should operate, but not otherwise. That case is referred to approvingly in *Proctor v. Thrall*, 22 Vt. 262, where it is said to be undoubtedly true that courts of equity often interpose for the purpose of correcting agreements of almost every description when the legal effect is entirely different from what the parties intended; and this, too, where the mistake relates to the effect merely, and so is more a mistake of law than of fact. But, it is added, that this is never done unless the contract when restricted will still operate in the manner and to the extent the parties intended.

So in *Dietrich* v. *Hutchinson*, 73 Vt. 134, 50 Atl. 810, 87 Am. St. Rep. 698, it said to be a principle of equity that when an instrument is drawn and executed that was intended to carry into effect an agreement previously made, but which by mistake, either of law or of fact, does not fulfil the intention of the parties, equity will afford relief, which is granted in different ways according to the circumstances of the case.

It remains to consider whether the actions at law enjoined herein will be retained and finally disposed of in this suit; and that they will, accords with the well settled doctrine of equity. Thus, in *Whipple* v. *Fair Haven*, 63 Vt. 221, 21 Atl. 533, it is said to be a familiar rule that when the court of chancery has jurisdiction of a case for one purpose, it will retain it for all other purposes, and dispose of the whole matter.

In *Enright* v. *Amsden*, 70 Vt. 180, 40 Atl. 37, as the court had jurisdiction to enjoin the action at law in the bill mentioned, it retained the case to be dealt with according to the practice of the court. And this will be done though the injunction covers only part of the controversy—1 Pom. Eq., 10th Ed. 236; and though purely legal rights have to be established and

legal remedies granted that would otherwise be beyond the scope of equitable jurisdiction.  Ib. §181.

The actions herein enjoined are three, commenced the same day, and after the settlement contract was made.  One is trover in favor of Cate against the orators to recover, the report says, for a quantity of lumber and other  personal property of the alleged value of $500, all of which was a part and grew out of the matters and things embraced in the contract under which the business was carried on down to the time Cate retired therefrom in the fall of 1903, and was included in the settlement contract.  That case has been twice tried in the county court with varying results, and such proceedings have been had therein that the *ad damnum* has been raised, first to $5,000, and then to $12,000, where it now stands.

Another of said actions is assumpsit in favor of Cate against the orators to recover $10,000 for lumber sold and money collected by the orators during the continuance of said business between the parties, and involves only matters and things embraced therein.

The other action is trover by Cate and the defendant Towne against the orators, in which Towne's interest grew out of the fact that he was lessee of a farm  owned by Cate and mortgaged to the orators, and was in possession as such lessee of certain personal property on the farm before and at the time t he settlement contract was made.  It is found that his interest in said farm and property was a part of the business in which the orators and Cate were engaged as aforesaid.

It is clear that Cate, his attorneys and agents, should  be perpetually enjoined from further prosecuting said actions at law brought in his name alone, and from commencing any other actions or suits at law or in equity, or instituting any other proceedings, against the orators or either of them, or against those claiming under them or either of them, to recover for or on account of the matters and things sought to be recovered for in said actions or any part thereof; and further, that it should be adjudged and decreed that said matters and things, and each and every of them, have been and are finally and conclusively settled and discharged as between the orators and Cate.

But said action in which Towne and Cate are co-plaintiffs

stands different. The report does not specify the property
sued for therein, but the bill shows that it is fifteen cows, one
horse, and one separator, of the alleged value of a thousand
dollars. Nor does the report specify the terms of Towne's
holding; but as his interest and possession existed before and
at the time the settlement contract was made, it cannot be
said from what appears that Cate had authority to deprive him
of his interest under the lease, whatever it was, by any settle-
ment he could make with the orators. Nor can we presume in
favor of the decree that the chancellor inferred such authority
from facts found, for there are none that would justify such an
inference.

It cannot be held, therefore, that the matters and things
involved in that action have been settled as to Towne, and so
he should be allowed to prosecute therefor in this suit, but only
according to his own right and for his own benefit, and not at
all under Cate's right and for his benefit, for as to him said
matters and things should be adjudged and decreed to have been
and to be fully and conclusively settled and discharged as be-
tween him and the orators; and both he and Towne, their and
each of their attorneys and agents should be perpetually en-
joined from further prosecuting said action at law.

As to costs in the actions at law, the orators should pay
them after the first term, and recover them only up to and in-
cluding that term, for they should have resorted to chancery
sooner. *Enright* v. *Amsden*, 70 Vt. 183, 40 Atl. 37.

The bill should be dismissed as to Mrs. Cate, with costs
both here and below, those below being awarded here, as no
show of reason appears why she should not have them. *Doty*
v. *Village of Johnson*, 84 Vt. 15, 77 Atl. 866.

*Reversed and remanded with mandate*.

---

The foregoing judgment was announced at the October
Term, 1911, but the case was held at the suggestion of Mrs.
Cate's counsel that she might want to move for a reargument
and at the November Term, 1911, she did so move, and briefs

and informal suggestions were subsequently submitted and have been considered.

The only ground of the motion that is worth mentioning is, that she gave up her homestead to the orators upon the terms set forth in the contract of settlement and no others; including the rights and the lack of restrictions given to her husband therein as well as the rights given to her; that she as well as he was in fact to profit by them; that one consideration of her giving up her homestead was, that her husband was to have the unrestricted right to avail himself of said contract as written, and that she would not have given up her homestead had she known that he was not to have that right, nor even had she known that he had voluntarily relinquished it in the manner shown in the chancellor's report, for she was in fact to profit by that right as well as he; and that to restrain that right as proposed would, in effect, reform the contract as to her by taking from her for a private purpose without her consent a part of the consideration to which she is entitled, and make a new contract for her to which she never agreed and does not now agree, which is contrary to the Constitution.

But, as said in the motion, this is not a new question in the case, for it was made in her brief at the January Term, 1911. But the Court did not pass upon it, not, however, through inadvertence as the motion assumes, but because there was no finding concerning it, Mrs. Cate not even having been a witness before the chancellor, as he says in his report, and therefore there was no basis for its consideration. And further, we now notice what we did not have in mind then, and what our attention has never been called to by counsel, that the matter is wholly *dehors* the record, for neither of Cate's answers make any allusion to it, the last of which was filed before Mrs. Cate was brought into the case as a party, and when she came in she adopted his answers as her answer, and his answers denied that said contract settled, or was intended to settle, anything other than what its terms imply when construed according to law, but set up no defence of this sort. This being so, Mrs. Cate cannot avail herself of it now as a ground for reargument, for a defendant, when he makes defence by way of answer, must set up all the various grounds of defence

upon which he intends to rely. *Warren* v. *Warren,* 30 Vt. 530; *White* v. *Amsden,* 67 Vt. 1, 13, 30 Atl. 972; 2 Dan. Ch. Pl. & Pr. 814*.

*Motion denied. Let the mandate go down.*